# EXHIBIT 21

**Request for Public Comment Regarding "Gender-Affirming Care" for Minors**

The Federal Trade Commission (FTC) invites public comment to better understand how consumers may have been exposed to false or unsupported claims about "gender-affirming care" (GAC), especially as it relates to minors, and to gauge the harms consumers may be experiencing.

Proponents of GAC, including healthcare and medical institutions, have long touted the benefits of this type of care, including for minors. Over time, however, reporting by multiple news outlets,[1] personal accounts by parents and detransitioners,[2] disclosures by whistleblowers, independent reviews and studies,[3] and even information and communications from institutions promoting these practices[4] have revealed potential deceptive or unfair practices involved in this type of medical care.

On June 18, 2025, after considering a wide range of authoritative sources including lawyers, families, and medical professionals with years of expertise in this field, the Supreme Court in *Skrmetti v. United States* affirmed the constitutionality of Tennessee's Senate Bill 1, a law that prohibits GAC for minors.[5] According to the Court, there are now "fierce scientific and policy debates about the safety, efficacy, and propriety of medical treatments in [the] evolving field" of transgender medicine. Participants in these debates "raise sincere concerns; the implications for all are profound."[6] Although the purported benefits of providing GAC for minors are reduced suicidality and improved mental health, a growing chorus of experts now publicly contradict these claims.

There remains widespread concern about the harms of GAC for minors, which has caused government officials to act both in the United States and abroad. On January 28, 2025, President Trump signed an executive order ending the federal government's previous support for GAC for minors.[7] More than two dozen states have passed laws like Tennessee Senate Bill 1 that prohibit GAC for minors.[8] Other countries have taken similar action. The United Kingdom's National Health Service (NHS), for example, stopped providing puberty suppressing hormones, or puberty blockers, to children "because there is not enough evidence on their clinical safety and

---

[1] E.g., Helen Lewis, *The Liberal Misinformation Bubble About Youth Gender Medicine*, The Atlantic (June 29, 2025), https://www.theatlantic.com/ideas/archive/2025/06/transgender-youth-skrmetti/683350/.

[2] E.g., Prisha Mosley, *I Began "Gender Transition" At 16. I Was Lied To In A Terrible Way. Now I Am Seeking Justice*, IWF (Jul. 27, 2023), https://www.iwf.org/2023/07/27/i-began-gender-transition-at-16-i-was-lied-to-in-a-terrible-way-now-i-am-seeking-justice/; *How One Detransitioner Found Peace Outside of Medicalization*, iWFeatures (May 18, 2023), https://www.iwfeatures.com/documentary/how-one-detransitioner-found-peace-outside-of-medicalization/.

[3] *E.g.*, Dr. Hilary Cass, *Independent Review of Gender Identity Services for Children and Young People: Final Report* (Apr. 2024), https://cass.independent-review.uk/home/publications/final-report/.

[4] Azeen Ghorayshi, *U.S. Study on Puberty Blockers Goes Unpublished Because of Politics, Doctor Says*, N.Y. Times (Oct. 23, 2024), https://www.nytimes.com/2024/10/23/science/puberty-blockers-olson-kennedy.html.

[5] 605 U.S. ---, 145 S. Ct. 1816 (2025).

[6] *Id.* at 1837.

[7] Exec. Order No. 14187, 90 Fed. Reg. 8771 (Jan. 28, 2025).

[8] Annette Choi, *27 states have passed laws restricting gender-affirming care for trans youth,* CNN (Apr. 30, 2025), https://www.cnn.com/politics/state-ban-gender-affirming-care-transgender-dg.

effectiveness."[9] And other European countries like Finland, Sweden, Norway, and Denmark have similarly restricted or banned various GAC procedures for minors.[10]

At the same time, some medical organizations continue to advocate for GAC as the best standard of care, despite the apparent lack of a widespread medical consensus as to whether GAC is the correct course of action for gender dysphoric youth. Many of these organizations rely on the World Professional Association of Transgender Health (WPATH), which continues to loosen its restrictions and standards regarding GAC for minors, despite increasing professional debate over gender transition protocols.[11]

Against this backdrop, the FTC seeks to evaluate whether consumers (in particular, minors) have been harmed by GAC and whether medical professionals or others may have violated Sections 5 and 12 of the FTC Act by failing to disclose material risks associated with GAC or making false or unsubstantiated claims about the benefits or effectiveness of GAC. As the agency that has been historically tasked as the federal government's guardian against deceptive health claims and has brought dozens of enforcement actions in this area, the FTC is uniquely positioned to investigate this potentially unlawful activity.

On July 9, the FTC held a workshop during which the Commission heard testimony from doctors, medical ethicists, whistleblowers, detransitioners, and parents of detransitioners. That testimony indicated that GAC practitioners may be actively deceiving consumers. The FTC now seeks input from the public, especially from those who have personal experience with GAC. The FTC encourages members of the public to comment on any issues or concerns that are relevant to the FTC's consideration of these topics, including by submitting any written data, advertisements, social media posts, disclosures, or empirical research. In particular, the FTC invites public comment on the following questions:

1. Have you or a family member ever visited a medical professional or other organization that recommended gender-affirming care ("GAC")? If so, describe your experience, including the following (if applicable):

   a. What led to their recommendation?
   b. What specific treatments did they recommend?
   c. Did the GAC practitioner describe the benefits or effectiveness of GAC?
   d. If you answered yes to 1.c, how did they describe the benefits or effectiveness?
   e. Did they provide to you any materials from what they claimed were authoritative sources that described the benefits or effectiveness of undergoing GAC?

---

[9] Treatment: Gender dysphoria, NHS (May 28, 2020), https://www.nhs.uk/conditions/gender-dysphoria/treatment/.

[10] Joshua P. Cohen, *Increasing Number Of European Nations Adopt A More Cautious Approach To Gender-Affirming Care Among Minors*, Forbes (June 6, 2023), https://www.forbes.com/sites/joshuacohen/2023/06/06/increasing-number-of-european-nations-adopt-a-more-cautious-approach-to-gender-affirming-care-among-minors/.

[11] Azeen Ghorayshi, *Biden Officials Push to Remove Age Limits for Trans Surgery*, Documents Show, N.Y. Times (June 25, 2024), https://www.nytimes.com/2024/06/25/health/transgender-minors-surgeries.html.

f.  Did they provide you with any materials from other sources describing the benefits or effectiveness of undergoing GAC?

g.  Did they describe the risks, side effects, or other harms that could come about because of undergoing GAC?

h.  If you answered yes to 1.g, how did they describe those risks, side effects, or other harms?

i.  Did they provide to you any materials from what they claimed were authoritative sources that described the risks, side effects, or other harms that could come about because of undergoing GAC?

j.  Did they provide you with any materials from other sources describing the risks, side effects, or other harms that could come about because of undergoing GAC?

k.  Did the GAC practitioner alert you to any professional or political controversy surrounding the existing debate on the science of GAC?

l.  Did the GAC practitioner inform you that some states have prohibited GAC for minors?

m.  Did the GAC practitioner attempt to persuade you or a family member to undergo GAC? Please be specific.

2.  Have you or a family member ever undergone GAC? If so, describe your experience, including the following (if applicable):

a.  What specific treatments did you or your family member undergo?

b.  Have you or your family member experienced harms or adverse effects resulting from the GAC procedures?

c.  Have you or your family member experienced any benefits resulting from the GAC procedures?

d.  If you answered yes to 2.b, what harms or adverse effects did you or your family member experience resulting from the GAC procedures?

e.  If you answered yes to 2.b, was the risk of these harms or adverse effects explained or disclosed prior to undergoing GAC procedures?

f.  If you answered yes to 2.b and 2.c, did the harms or adverse effects resulting from the GAC procedures outweigh any benefits, or vice versa?

3.  Are you aware of any practitioners, entities, or institutions providing GAC that have made false representations regarding the benefits or effectiveness of GAC? If so, describe, including the following:

a.  What practitioners, entities, or institutions?

b.  What were the false representations?

c.  How were the false representations made (e.g., in-person, conference, social media posts, websites)?

4. Are you aware of any individuals, entities, or institutions that have promoted, advertised, or otherwise made public representations about GAC procedures or GAC-related products? If so, describe, including the following:

   a. What entities, individuals, or institutions?
   b. What were the representations?
   c. Where did the representations appear (e.g., in-person, conferences, social media posts, websites)?
   d. Did any of the representations tout the effectiveness or benefits of GAC procedures or related products?
   e. Did any of the representations discuss the risks, side effects, or other harms of GAC procedures or related products?
   f. If any of these representations were made in social media posts made by influencers, did the posts indicate if there was any material connection between the influencer and any provider of GAC procedures or maker of any GAC-related product?

Comments must be received no later than **Friday, September 26, 2025 by 11:59pm ET**.

**Instructions for submitting:**

1. Go to the docket on regulations.gov

2. Click "Browse Documents"

3. Underneath the document containing the RFI questions, click comment (the blue button)

4. Fill out the form which requires:

   4.1. The comment text itself

   4.2. The comment category

5. You can submit as: an individual, an organization, or anonymous

   5.1. Optional: Attachments to aid your response. You can attach up to 20 files, but each file cannot exceed 10MB. Valid file types include: bmp, docx, gif, jpg, jpeg, pdf, png, pptx, rtf, sgml, tif, tiff, txt, wpd, xlsx, xml.

**Confidentiality:**

Because comments responsive to this RFI are likely to include sensitive health information protected from disclosure by 5 U.S.C. § 552 and 16 C.F.R. § 4.10(a)(4), such information will be redacted prior to posting unless you inform us in writing by stating in your comment, "I affirmatively consent to this comment being published without redaction of sensitive health information."

Please DO NOT include other forms of sensitive or confidential information in comments submitted through Regulations.gov including:

- social security numbers;
- dates of birth;
- driver's license numbers or other state identification numbers;
- financial account information;
- competitively sensitive information.

If you include such information in your comment, it will be redacted prior to publication.

Comments submitted through Regulations.gov will be posted on the Internet and made available to the public. Posted comments will include commenters' names and any other content that is not subject to the redactions described above. Comments submitted in response to this RFI could inform the FTC's enforcement priorities and future actions.

**If you want to submit a confidential, non-public comment for consideration, DO NOT submit through Regulations.gov.** Instead, please send the comment, along with a request for confidential treatment, to ElectronicFilings@ftc.gov or via mail to the attention of the Office of the Secretary. The communication should reference the Regulations.gov docket number, FTC-2025-0264. Per FTC Rule 4.9(c), "Persons submitting material to the Commission … may designate that material or portions of it confidential and request that it be withheld from the public record. All requests for confidential treatment shall be supported by a showing of justification in light of applicable statutes, rules, orders of the Commission or its administrative law judges, orders of the courts, or other relevant authority." 16 C.F.R. § 4.9(c). The FTC's Office of General Counsel (OGC) will review requests for confidential treatment. If OGC grants the request for confidential treatment in full, the comment will be available for consideration by FTC staff but will not be posted on Regulations.gov. If OGC denies the request for confidential treatment, it will notify the submitter and provide them with ten business days to withdraw the comment. If the submitter requests that the comment be withdrawn, the comment will not be posted on Regulations.gov or otherwise become public.