# EXHIBIT 23

| | |
|---|---|
| From: | Sawyer, Heather Chase |
| Sent: | Wednesday, February 4, 2026 2:15 PM |
| To: | Cohen, Jonathan |
| Cc: | Chiang, Annie; Clausen, Hans; Tolentino, Ray; Ranjan, Dev |
| Subject: | RE: CID to Endocrine Society - Friday's Meet & Confer |

Dear Jonathan –

Tomorrow at 5:00 pm ET works for us, and happy to talk through our Fourth Amendment concerns further during our call.

We'll keep an eye out for the invite.

Best,
Heather

---

From: Cohen, Jonathan <jcohen2@ftc.gov>
Sent: Wednesday, February 4, 2026 1:31 PM
To: Sawyer, Heather Chase <hsawyer@cooley.com>
Cc: Chiang, Annie <achiang@ftc.gov>; Clausen, Hans <hclausen@ftc.gov>; Tolentino, Ray <rtolentino@cooley.com>; Ranjan, Dev <dranjan@cooley.com>
Subject: RE: CID to Endocrine Society - Friday's Meet & Confer

**CAUTION: This Message Is From an External Sender**
This message came from outside your organization.

We obviously disagree with much of this, but look forward to talking further. We're not available this afternoon, but could talk tomorrow at 5:00, or Friday at 2:00 or 4:00.

One quick thing: what's the Fourth Amendment issue?

Thanks,

**Jonathan Cohen**
Chief Litigation Counsel
Bureau of Consumer Protection | Federal Trade Commission
600 Pennsylvania Avenue, N.W., HQ-462  Washington, D.C.  20580
(202) 326-2551 | jcohen2@ftc.gov

---

From: Sawyer, Heather Chase <hsawyer@cooley.com>
Sent: Tuesday, February 3, 2026 7:55 PM
To: Cohen, Jonathan <jcohen2@ftc.gov>
Cc: Chiang, Annie <achiang@ftc.gov>; Clausen, Hans <hclausen@ftc.gov>; Tolentino, Ray <rtolentino@cooley.com>; Ranjan, Dev <dranjan@cooley.com>
Subject: RE: CID to Endocrine Society - Friday's Meet & Confer

Dear Jonathan,

Thank you for the follow-up on our initial discussion and for sending the proposed schedule. We'd like to schedule another discussion and would propose doing that tomorrow, February 4, at 4:00 pm ET.

As we noted during our initial call, we are in the process of assessing the requests and discussing them with our client. As we also mentioned, the Endocrine Society is a 501(c)(3) nonprofit organization. It does not have extensive experience responding to formal legal demands, and its operations and recordkeeping are structured to support its charitable mission rather than commercial or litigation-driven processes. We have nonetheless made progress in assessing your requests, including the questions on retention and production outlined in your email.

Regarding the scope of the CID, we continue to have serious concerns about the Commission's jurisdiction to investigate our client or to request the materials or answers specified in the CID. In fact, further research indicates that the CID is *ultra vires*. We do not understand the Commission to be taking the position that legitimate, charitable nonprofits are within its enforcement jurisdiction, and we believe that limitation unambiguously places our client outside the FTC's ambit. We understand that the Commission's position is that it can issue compulsory process to entities outside its enforcement jurisdiction. However, we additionally believe that the materials requested in the CID are not reasonably relevant to any plausible violation of 15 U.S.C. §§ 45 or 52. In particular, we disagree that the hypothetical situation that you raised during our initial meet and confer – involving a nonprofit dental association's statement of medical opinion that a treatment is safe and effective – could fall within the ambit of those statutes.

We also believe the CID violates the First and Fourth Amendments – an inquiry that also bears on any assessment as to the reasonableness of the requests. As just one example, which we provided during our initial call, several of the requests sought "all Documents" (defined sweepingly in the CID) "regardless of time period." We appreciate your willingness to revise some of these requests (by limiting some to January 1, 2014 to the present) but remain concerned that requiring production of twelve years of documents does not pass constitutional muster.

As we also noted during our first call, we anticipated that we would have additional concerns about the broad scope of many of your requests but that a further explanation from you as to the connection to commercial activities, including "marketing" or "advertising" as noted in the CID, would assist us in determining the reasonableness of your requests. We still seek that information and hope that you might be able to provide that as our conversations continue.

Although our position is that some of the above concerns would justify our client's declining to comply with the CID *in toto*, we are prepared to move forward in good faith and are prepared to have additional discussions with you about the specific ways in which the CID is overly broad and burdensome as well as how it could be, at minimum, substantially narrowed. We are also prepared to discuss a timeline for producing on your priority topics (document requests 9 and 11), which would also necessitate more discussion on the specific documents being requested to ensure a meeting of the minds on those requests that would allow us to respond fully. However, to do that, we would need an extension of time on the petition to quash and request that you grant a one-week extension, until February 17, 2026, which we are also happy to discuss during our next call.

Please let us know if you are available to talk tomorrow (Wednesday, February 4) at 4:00 pm. If that time is not convenient, please let us know some available times on Thursday.

Best,
Heather

**From:** Cohen, Jonathan <jcohen2@ftc.gov>
**Sent:** Monday, February 2, 2026 5:48 PM
**To:** Sawyer, Heather Chase <hsawyer@cooley.com>; Tolentino, Ray <rtolentino@cooley.com>
**Cc:** Chiang, Annie <achiang@ftc.gov>; Clausen, Hans <hclausen@ftc.gov>
**Subject:** CID to Endocrine Society - Friday's Meet & Confer

Counsel,

Thank you for taking the time to meet with us last Friday afternoon (January 30) regarding the Commission's Civil Investigative Demand ("CID") to the Endocrine Society ("ES"). During that meet-and-confer, we raised several matters and offered you a proposed production schedule. Those issues are outlined in more detail below. We also offer a concession concerning the issue you raised regarding the scope of certain requests and interrogatories.

### I.    Document Retention and Production

First, you confirmed that ES has imposed a litigation hold, but you were not yet prepared to discuss: (i) how documents responsive to the requests in the Commission's CID are stored or maintained at your organization or other records management systems in place; (ii) the custodians that would have relevant documents responsive to the CID in their possession; (iii) your process for reviewing those documents to determine responsiveness as well as your privilege review and how or when you would assert protected status claims, or (iv) whether you plan to use certain tools, like AI or Technology Assisted Review ("TAR"), to review and identify

responsive documents. We explained that if you plan to use any AI-assisted program or tool in connection with your response, then you must disclose this to us. You may not use TAR or AI without our consent, although we would work with you in good faith to attempt to reach an agreement should you propose to use TAR or AI.

Second, with respect to privilege logs, we explained that ES must comply with Commission rules, and it must produce logs contemporaneously with the associated production. You asked to discuss the process for privilege review at a later time, and we are always willing to discuss this, or anything else, with you.

## II.     Scope of the CID

You noted that several requests lack any specified time limitation. Specifically, document requests ("Requests") nos. 1-5 and Interrogatory Nos. 8 and 13 request relevant information "[r]egardless of time period[.]" Importantly, Section 5 of the FTC Act does not include a statute of limitations, and accordingly, these Requests are appropriate as written. However, in the interest of compromise, we will narrow the timeframe for Request Nos. 1-3 and Interrogatories 8 and 13. Specifically, for these requests, we will limit the period from **January 1, 2014, to the present**. This precedes the 2017 Endocrine Society Guidelines—central to the CID—by approximately three years.

Notably, Request Nos. 4-5, which seek Communications with Professional Medical Organizations and other organizations, are inherently time limited because they seek documents "related to the 2017 ES Guidelines or the 2020 Position Statement." Accordingly, we cannot agree to further limit these requests.

We also asked whether you wanted to discuss other issues concerning the CID. You expressed potential reservations regarding the Commission's authority to issue the CID—a potential position with which we strongly disagree—but did not raise other issues.

## III.    Production Schedule

At the close of our meeting, we offered you a production schedule, which is reflected below. Assuming ES agrees to accept service, forgo any petition to quash, and continue engaging with us in good faith (all standard requirements), we will extend the CID's return date as follows:

- By February 20, you will respond fully to Document Request Nos. 9 and 11;
- By March 20, you will respond fully to five Document Requests of your choosing and five Interrogatories of your choosing (except that you may not select Interrogatory 15 or Request 12 (those logically come last)).

4

- By April 20, you will respond fully to all remaining Document Requests and Interrogatories.

Relatedly, you asked to extend the petition to quash deadline by two weeks. However, we cannot agree to extend that deadline – an enormous concession on our part -- without a reciprocal commitment from ES to respond fully to Document Request Nos. 9 and 11 by an agreed date. Our proposed production schedule affords you ninety days to complete your response, which is eminently reasonable. Moreover, it provides ES extensive discretion over the order in which it produces material—another concession.

As a formal matter, and in conformance with the applicable rules, we note that Deputy Director Kate White has endorsed the CID modifications this correspondence contains. We look forward to hearing from you.

**Jonathan Cohen**
Chief Litigation Counsel
Bureau of Consumer Protection | Federal Trade Commission
600 Pennsylvania Avenue, N.W., HQ-462  Washington, D.C.  20580
(202) 326-2551 | jcohen2@ftc.gov

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

| | |
|---|---|
| **From:** | Sawyer, Heather Chase |
| **Sent:** | Friday, February 6, 2026 9:09 AM |
| **To:** | Cohen, Jonathan |
| **Cc:** | Chiang, Annie; Clausen, Hans; White, Katherine; Tolentino, Ray; Ranjan, Dev |
| **Subject:** | RE: PTQ Deadline |

Dear Jonathan –

Thank you for the discussion and for confirming the deadline for our Petition to Quash. To recap our call from yesterday, we again raised our concerns regarding jurisdiction; the First and Fourth Amendments; and ambiguity, vagueness, overbreadth, and burden—with some specific examples of the difficulties that we had identified and hoped to discuss.

To capture where we think we've made some progress, particularly regarding the two priority requests that you'd identified in our first meeting:

- For Document Request No. 11, we conveyed that our client would be willing to provide Financial Statements from January 1, 2021, through December 2024 on your requested timeline of February 20. We explained that statements are not yet available for 2025.

- For Document Request No. 9, we explained our concerns about the breadth, as well as vague and ambiguous terms (including the broad definition of "You" and "Documents," which includes drafts and notated copies, and the overbreadth, vagueness and ambiguity in "Covered Statements," which require determination of whether and when something could be an "express *or implied*" representation). We noted that our client uses a Microsoft 365-based office system and explained the burden and difficulty of searching, collecting, and reviewing potentially responsive documents. We also asked for an explanation of what the term "disseminated" meant, which you clarified as meaning statements distributed to the public by the Endocrine Society.
    - Given that, we proposed limiting the request to statements that the Endocrine Society approved and disseminated to the public that included substantive discussion of the treatment of gender dysphoria or gender incongruence.
    - You objected on the grounds that this would grant our client too much discretion and asked if we would be willing to propose search terms and discuss appropriate custodians as a potential path forward.
    - We said we would be willing to talk to our client and see what we might be able to work out and asked about the timeline given the looming deadline on the motion to quash (of early next week).

1

- You asked us to provide a proposal on search terms and custodians by Saturday and that no extension of the deadline would be possible before the Commission had reviewed and approved our proposal.
- We proposed, instead, that we be given until early next week to provide you with a proposal and that the deadline on the petition be extended for a week from the current deadline (i.e., to February 17), which would then give us time to discuss and negotiate a possible agreement regarding terms and custodians.
- You reiterated that there could be no extension on the PTQ before Commission review and approval of the proposal on how to proceed on Request No. 9 because there would need to be a showing of "good faith." (In response, we pointed out that our client's willingness to respond to your other priority request on your requested timeline demonstrates good faith. As we've previously noted, your requested timeline for complying on your priority items is February 20, which is nearly a month earlier than the March 16 production date in the CID.)
- In light of your confirmation that our deadline on the motion to quash is Tuesday, February 10, we remain willing to speak with our client and provide a proposal for proceeding on Document Request No. 9 but can only do so only if the petition to quash is extended to February 17 (as we had proposed) so that we have adequate time to engage in meaningful discussions. As we are sure you understand, without that brief extension, we do not have a choice given the uncertainty as to whether we will reach agreement on how to proceed before our deadline on the PTQ.

That concern is particularly acute given the position you have taken in response to our good-faith efforts to ensure that you understood fully our First Amendment position.

We have been clear from the outset that we believe the CID violates the First Amendment. We flagged it in our initial meeting and in our request for a second meet and confer – where we reiterated that "we believe the CID violates the First and Fourth Amendments." In your response, you asked "what's the Fourth Amendment issue?" – leading me to respond that I would be "happy to talk through our Fourth Amendment concerns further during our call." We did that. And even though you did not ask for further details about our First Amendment concerns, we also explained our view as to why the CID is problematic (because it violates the Endocrine Society's rights of free speech, assembly, and petition; and related and well-recognized associational rights and that the CID constitutes retaliatory viewpoint discrimination).

You then took the position that we had somehow "waived" our right to raise our retaliation argument because we had not explained it early enough to give the Commission time to consider it before the deadline for a petition to quash. We asked you to explain how we could have waived an issue that we had expressly flagged multiple times during our meetings—namely, that the CID has significant First Amendment concerns—before including it in any petition to quash, as is

2

required by Commission rules. We also noted that, to the extent that your argument was based on a timing technicality—the CID's request that a telephonic meeting be held within 14 days of receipt—we had an initial call within that timeframe where we flagged First Amendment concerns. We also noted it in our follow-up email, which we sent the day after you emailed your proposal for your priority requests, and we offered to meet the next day. (You were not available and we then took the first available time you offered.) Lastly, we pointed out that, to the extent the Commission was open to considering our view, our proposed modest extension of the deadline to file the petition to quash would afford an opportunity for further discussion.

In response, you reiterated your surprising view that the argument had been waived and raised concern that we were "sandbagging" you by not raising it earlier, despite the fact that (1) we flagged First Amendment concerns from the outset, (2) you had never asked about them, (3) we had just provided examples of why we believed our position is supported, (4) we had explained throughout that our research remains ongoing, and (5) that taking the substance of your objection at face value, it would have required us to explain this argument more fully to you—at most—two days earlier.

As we made clear during the call, if there is room for meaningful discussion and the possibility that the Commission might be open to our arguments, we remain willing to discuss them, and an extension of time on the petition to quash would allow for that.

Given the looming deadline on the petition, and the need for us to discuss any proposals with our client, we respectfully request that you let us know by noon today whether the Commission will grant the requested extension of time and whether you are interested in further discussion regarding your priority Request No. 9.

Best,
Heather

From: Cohen, Jonathan <jcohen2@ftc.gov>
Sent: Thursday, February 5, 2026 7:33 PM
To: Sawyer, Heather Chase <hsawyer@cooley.com>
Cc: Chiang, Annie <achiang@ftc.gov>; Clausen, Hans <hclausen@ftc.gov>; White, Katherine <kwhite@ftc.gov>; Tolentino, Ray <rtolentino@cooley.com>; Ranjan, Dev <dranjan@cooley.com>
Subject: PTQ Deadline

**CAUTION: This Message Is From an External Sender**
This message came from outside your organization.

Heather,

Thank you for speaking with us earlier this evening. Among other things, we discussed the return date for your potential Petition To Quash ("PTQ"). As a courtesy and to avoid any doubt, we agree with you that your PTQ is due February 10.

As a formal matter, to the extent this constitutes a modification of the CID, Deputy Director Kate White has endorsed it.

Best,

**Jonathan Cohen**
Chief Litigation Counsel
Bureau of Consumer Protection | Federal Trade Commission
600 Pennsylvania Avenue, N.W., HQ-462  Washington, D.C.  20580
(202) 326-2551  |  jcohen2@ftc.gov

| | |
|---|---|
| From: | Sawyer, Heather Chase |
| Sent: | Monday, February 9, 2026 4:57 PM |
| To: | Cohen, Jonathan |
| Cc: | Chiang, Annie; Clausen, Hans; White, Katherine; Geho, Douglas; Hitchcock, Jennie; Tolentino, Ray; Ranjan, Dev |
| Subject: | RE: CID to Endocrine Society |
| Attachments: | Cooley Response to FTC Feb. 6 Letter.pdf |

Dear Jonathan,

Please see attached response to your letter from Friday.

Best,
Heather

---

From: Cohen, Jonathan <jcohen2@ftc.gov>
Sent: Friday, February 6, 2026 9:53 PM
To: Sawyer, Heather Chase <hsawyer@cooley.com>; Tolentino, Ray <rtolentino@cooley.com>; Ranjan, Dev <dranjan@cooley.com>
Cc: Chiang, Annie <achiang@ftc.gov>; Clausen, Hans <hclausen@ftc.gov>; White, Katherine <kwhite@ftc.gov>; Geho, Douglas <dgeho@ftc.gov>; Hitchcock, Jennie <jhitchcock@ftc.gov>
Subject: CID to Endocrine Society

**CAUTION: This Message Is From an External Sender**
This message came from outside your organization.

Please see the attached correspondence.

Jonathan Cohen
Chief Litigation Counsel
Bureau of Consumer Protection | Federal Trade Commission
600 Pennsylvania Avenue, N.W., HQ-462 Washington, D.C. 20580
(202) 326-2551 | jcohen2@ftc.gov

1



United States of America
FEDERAL TRADE COMMISSION
600 PENNSYLVANIA AVE. NW
WASHINGTON, DC 20580

Bureau of Consumer Protection
   Chief Litigation Counsel

**Jonathan Cohen**
**(202) 326-2551; jcohen2@ftc.gov**

February 6, 2026

**VIA EMAIL**

Heather Chase Sawyer, Esq. (hsawyer@cooley.com)
Ray Tolentino, Esq. (rtolentino@cooley.com)
Dev Ranjan, Esq. (dranjan@cooley.com)
Cooley LLP
1299 Pennsylvania Ave NW
Washington, DC 20004
(202) 842-7800

    Re:   <u>Civil Investigative Demand to Endocrine Society</u>

Counsel,

    We met again yesterday (February 5) regarding the Commission's Civil Investigative Demand ("CID") to your client, the Endocrine Society ("ES"). At this point, we have grave reservations about the manner in which ES has conducted the meet-and-confer process, which you do not appear to have approached in good faith. Specifically, after an earlier hourlong meet-and-confer pursuant to 16 C.F.R. § 2.7(k), and also after written correspondence, and in the final moments of yesterday's early-evening second meet-and-confer, you twice asked us to confirm that we felt you had raised, in essence, all issues there were to raise. We declined to provide that impossible assurance because we could not know what issues you might perceive. Only then did you raise—for the first time—alleged "retaliation" and "viewpoint discrimination." Quite correctly, and as further explained below, we informed you that ES had waived those issues.[1] *See* 16 C.F.R. § 2.7(k).[2]

---

    [1] Indeed, ES's flagrant noncompliance with 16 C.F.R. § 2.7(k) is so egregious that ES has almost certainly waived every objection, not merely the late-disclosed ones. You were unprepared to discuss *any* of the mandatory subjects that our initial meet-and-confer must cover pursuant to Section 2.7(k), and ES still has not addressed most of our questions with respect to those issues.

    [2] The CID's first sentence reiterates this rule.

At that point, counsel started yelling. Counsel made a thinly-veiled, offensive (and false) accusation against FTC attorneys, and also grossly mischaracterized the CID itself.[3]

Before the dialogue unraveled, we discussed several other matters, some of which we outline below. Notwithstanding the situation, to the extent we can accommodate substantive requests for modifications, we will do so through this correspondence.

**I.      Pre-Petition Meet-and Confer Process and Endocrine Society's Waiver**

As an initial matter, you received the Commission's CID on or before January 20, 2026. Its first line reads: "You must contact FTC counsel . . . as soon as possible to schedule a telephonic meeting to be held within fourteen (14) days after You receive this CID." Furthermore, the CID's introductory language tracks the operative regulation, which requires that, as part of the "[m]andatory pre-petition meet and confer process," you "address and attempt to resolve all issues" at that meet-and-confer.[4] 16 C.F.R. § 2.7(k) (emphasis added). "Absent extraordinary circumstances," the Commission's regulations preclude it from considering issues you failed to raise. *See id.* The Commission will also not consider a Petition To Quash ("PTQ") without a statement confirming that counsel has made an "effort in good faith to resolve the issues raised by the petition." *Id.* § 2.10(a)(2).

ES contacted us, for the first time, a full week after receiving the CID (on January 27, and at the close of business). The parties mutually agreed to a meet-and-confer on January 30, within the fourteen-day regulatory pre-petition deadline. We subsequently summarized that meeting, and most pertinent here, you never mentioned the words "First Amendment" during the hourlong call, let alone raised any issue related to supposed retaliation or viewpoint discrimination.

Your first reference to the First Amendment came through correspondence on February 3, after business hours. Specifically, you wrote: "We also believe the CID violates the First and Fourth Amendments – an inquiry that also bears on any assessment as to the reasonableness of the requests." You did not explain the argument further. Nor did you suggest having raised either First or Fourth Amendment issues during the prior meeting—and you could not have done so honestly. You concluded your email by proposing "to talk tomorrow (Wednesday, February 4) at 4:00 pm." (Parenthesis in original.) Because you offered no alternative times on Wednesday, and we were not available at the single option you provided, the parties instead agreed to speak for another hour at 5:00 PM on February 5—this is the unfortunate conversation described above.

During that call, and as discussed further below, you did—for the first time—raise concerns that particular specifications might chill protected speech and associational rights, or the right to petition, and you further contended that the Fourth Amendment requires additional scrutiny that the CID purportedly cannot withstand. (We disagree with these positions.) At the call's apparent conclusion, you asked, twice, whether we felt comfortable that we had discussed everything necessary. We told you, in essence, "we don't know what we don't know," and therefore, we could not provide

---

[3] Specifically, you mischaracterized the CID as referencing administration policy that there are two sexes, male and female. The CID contains no such reference.

[4] Among other things, Section 2.7(k) requires that, at the pre-petition meet-and-confer within the first fourteen days, you "make available personnel with the knowledge necessary for resolution of the issues relevant to compliance with compulsory process," which you did not do. Nor were you prepared to discuss your client's record management systems, potential custodians, ESI issues and "methods of retrieval." 16 C.F.R. § 2.7(k). Nor were you prepared confer regarding "issues relating to protected status and the form and manner in which claims of protected status will be asserted." *Id.* In short, ES came nowhere close to satisfying the prerequisites to filing a petition to quash.

2

you that assurance. At 5:55 PM, immediately after it became clear that we would not provide you some sort of catch-all waiver exemption, you raised "viewpoint discrimination" and "retaliation" for the first time. We immediately stated that ES had waived these two belatedly raised issues, at which point the conversation devolved as we recount above.

Nevertheless, we endeavored to learn more about your untimely viewpoint discrimination and retaliation claims. It appeared that, from your perspective, these distinct issues are actually the same thing, and that, because—in your view, not ours—the President and/or other executive agencies harbor animus toward the transgender community, the CID is necessarily discriminatory or retaliatory. We pressed for specific examples concerning the FTC, and you initially pointed us to entirely unrelated litigation involving our Bureau of Competition's investigation concerning collusion between advertisers. It would be hard to imagine anything more unrelated to your CID, so we pressed further, and you eventually directed us to a single example: a "memorandum by the current Chairman directing the FTC to retaliate against" transgendered persons. We assure you, no such memorandum exists.

## II.   Other Substantive Issues and Modifications

Earlier in the February 5 call, you asked us to clarify or explain certain issues, or agree to various modifications. First, you raised questions concerning the definition of ES that includes standard language encompassing "subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, members, employees, agents, consultants, and other persons working for or on behalf of the foregoing." In this context, "members" refers to LLC members; please do not overread the word to support an objection where none exists. To the extent any modification is necessary, you should construe "members" in the definition to include only "LLC members," to the extent any exist. This CID does not seek a response on behalf of thousands of individual ES members, nor is that our intent.

Second, we disagree that any element of the CID restricts ES's right to petition the government, but we nevertheless discussed that issue in the context of Document Request No. 7. That request seeks "testimony, advocacy, or other information provided to any legislature or regulator related to PGDTs." Essentially, the CID asks for information (likely publicly-available) because ES is in the best position to gather it. However, we agreed to accept a list of publicly-available material, sufficient to enable us to retrieve it ourselves.[5]

With the exception of issues associated with your request for an extension, addressed further below, we did not discuss any other substantive issues in detail not yet mentioned herein.[6]

## III.  Extension Request

We discussed several other substantive issues within the broader context of your request that we extend the PTQ deadline. As you know, we offered to extend the PTQ deadline if ES fully

---

[5] Although Document Request No. 7 does not request drafts (unless, for some reason, ES provided a legislator or regulator with a draft), we do not modify or limit any other request that would apply to draft documents or other materials that you subsequently provided to legislators or regulators. And Request No. 7 still encompasses material that, for whatever reason, is not publicly-available. If any such material exists, you must produce it.

[6] Earlier today, you sent correspondence purporting to summarize aspects of yesterday's call. We do not agree with every assertion therein, and it also omits critical information. You should not construe the fact that we have not responded point-by-point to everything you wrote this morning, or earlier, as agreement.

CID to Endocrine Society
February 6, 2026—Page 4

responded to two Requests we prioritized: No. 9 ("All Documents You disseminated referencing the Covered Statements," and No. 11 ("Your Financial Statements for Each Year."). Below, we divide our discussion between the portion that occurred before 5:55 PM and what transpired afterward.

### A. Before 5:55 PM

With respect to Request No. 11 (Financial Statements), You proposed to produce responsive information through 2024, but our discussion primarily concerned the more important Request No. 9 (Covered Statements). You contended that essentially everything about Request No. 9 is vague or problematic for various reasons, including specifically:

- You alleged that the specification is overbroad because our definition of "Document" is allegedly overbroad. As you know, however, the definition of "Document" comports with that commonly used in CIDs and, more generally, in federal litigation. There is nothing unique about a request that seeks drafts, for instance, or communications made through various media. And you did not quantify the alleged burden in any way and, indeed, you have refused to provide us with basic information about how ES stores information or what responsive documents of different types might exist. *See supra* at 2 n.4.

- "Dissemination" is a commonplace term in consumer protection investigations with a plain meaning, and the Commission need not define every word in the CID. To the extent helpful, we specify for you that "dissemination" means Documents ES sent outside its organization either to multiple recipients, or to a single recipient with the intent that they reach multiple recipients.

- You also objected to the definition of Covered Statements because it includes "implied" claims, another very common concept in consumer protection. Indeed, it would be extraordinarily unusual for the Commission to seek only express claims in a consumer protection investigation focused on representations ultimately made to consumers. Although you must apply judgment to determine what Documents are responsive, that is always the case. And we may ultimately disagree regarding whether a Document contains an implied claim. But none of these ordinary issues is a valid objection.

In light of our discussion concerning these issues, and in the interest of compromise, we proposed that you provide us with search terms to address Request No. 9. As you know, this is a common approach to addressing document requests generally, including ones such as No. 9. In particular, we requested a search term proposal (and other elements, such as a potential time limitation and proposed custodians) by Saturday, February 7. We further committed to review your proposal immediately over the weekend, and if the proposal appeared in good faith, to extend the PTQ deadline briefly to allow further negotiations. Suffice it to say, we no longer believe that ES has acted, or will act, in good faith.

### B. After 5:55 PM

At this point, you blamed us for your waiver and demanded a PTQ extension accordingly. To the extent this is confusing, it made no sense to us either. What you appeared to argue is this: (1) ES is willing to discuss retaliation and viewpoint discrimination more thoroughly over the coming week; (2) we have declined to extend the PTQ deadline to enable discussions during that time; so therefore

4

CID to Endocrine Society
February 6, 2026—Page 5

(3) ES' waiver is our fault, and will remain our fault unless we grant the extension to enable ES to undo the waiver.

To the extent we can unpack this tangled reasoning at all, it is wrong for two reasons. First, and most important, whatever happened yesterday—or might happen next week—makes no difference because none of it is within the first fourteen days, when the regulation required you to raise "all issues." 16 C.F.R. § 2.7(k). Second, even assuming we had the authority to overrule a federal regulation—which we plainly do not—doing so would reward parties for sandbagging: waiting until the last minute, then demanding an extension because they chose to wait until the last minute. The regulation intends to prevent exactly this behavior—your behavior during this process.

As a formal matter, and in conformance with the applicable rules, we note that Deputy Director Doug Geho has endorsed the CID modifications this correspondence contains.
.

Very truly yours,

*Jonathan Cohen*

Chief Litigation Counsel
Bureau of Consumer Protection


CC:   Via Email

　　　Kate White, Deputy Director
　　　Doug Geho, Deputy Director
　　　Annie Chiang
　　　Jennie Hitchcock
　　　Hans Clausen
　　　Bureau of Consumer Protection
　　　Federal Trade Commission



Heather Sawyer
T: +1 202 776 2030
hsawyer@cooley.com

February 9, 2026

Jonathan Cohen
Chief Litigation Counsel
Bureau of Consumer Protection
Federal Trade Commission
600 Pennsylvania Ave. NW
Washington, DC 20580

**Re: Civil Investigative Demand to the Endocrine Society**

Dear Jonathan:

We write in response to your letter of February 6. While we will not undertake a point-by-point rebuttal to your characterization of the meet-and-confer process, we disagree with many of its assertions. In particular, given that we have engaged in substantive discussions with you about our jurisdictional, constitutional, and related overbreadth and undue burden objections to the CID throughout the process, we find your position that we have forfeited every objection to the CID confounding.

We are similarly surprised by your accusation of bad faith. As we have repeatedly made clear, we believe our concerns about the legality of the CID would justify a decision by the Endocrine Society to refuse to produce the requested materials altogether. Despite that, we have remained willing to work with you toward voluntary compliance. Your "grave reservations" about our good faith are impossible to reconcile with our offer to comply with your two priority requests on the timeline you requested—a date nearly a month before the return date set forth in the CID itself. In return for our offered compromises, you have so far maintained the unusual position that we should waive our right to challenge any aspect of the CID—the same waiver you now assert we have surrendered to you inadvertently—as part of an initial agreement before full negotiations regarding compliance are possible.

Finally, we disagree with your characterization that anyone was "yelling" during our February 5, 2026, conference, as well as your assertion that there was any "accusation against FTC attorneys." The rhetoric of your letter is certainly unnecessary for any substantive arguments you have made. It is consistent, however, with the strikingly aggressive posture the Commission has taken in every aspect of this investigation into "false advertising" by a more than 100-year-old charitable medical organization.

Cooley LLP   1299 Pennsylvania Avenue NW   Suite 700   Washington, DC   20004-2400
t: +1 202 842 7800  f: +1 202 842 7899  cooley.com



Jonathan Cohen
February 9, 2026
Page Two

For that reason, if anything, your letter bolsters our concern that this is not an ordinary or routine investigation. It also confirms our growing concern that our client will not be treated fairly or reasonably in this forum.

Sincerely,

Heather Sawyer

CC: Via Email

    Kate White, Deputy Director
    Doug Geho, Deputy Director
    Annie Chiang
    Jennie Hitchcock
    Hans Clausen
    Bureau of Consumer Protection
    Federal Trade Commission

    Ray Tolentino, Cooley LLP
    Dev Ranjan, Cooley LLP